UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ROBERT L.,[1]

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

21-CV-00125-LJV
DECISION & ORDER

---

On January 22, 2021, the plaintiff, Robert L. ("Robert"), brought this action under the Social Security Act ("the Act"). Docket Item 1. He seeks review of the determination by the Commissioner of Social Security ("Commissioner") that he was not disabled.[2] *Id.* On December 20, 2021, Robert moved for judgment on the pleadings, Docket Item 7; on May 19, 2022, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 9; and on June 30, 2022, Robert replied, Docket Item 10.

---

[1] To protect the privacy interests of Social Security litigants while maintaining public access to judicial records, this Court will identify any non-government party in cases filed under 42 U.S.C. § 405(g) only by first name and last initial. Standing Order, Identification of Non-Government Parties in Social Security Opinions (W.D.N.Y. Nov. 18, 2020).

[2] Robert applied for both Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Docket Item 6 at 234, 236. One category of persons eligible for DIB includes any adult with a disability who, based on his quarters of qualifying work, meets the Act's insured-status requirements. *See* 42 U.S.C. § 423(c); *Arnone v. Bowen*, 882 F.2d 34, 37-38 (2d Cir. 1989). SSI, on the other hand, is paid to a person with a disability who also demonstrates financial need. 42 U.S.C. § 1382(a). A qualified individual may receive both DIB and SSI, and the Social Security Administration uses the same five-step evaluation process to determine eligibility for both programs. *See* 20 C.F.R. §§ 404.1520(a)(4) (concerning DIB), 416.920(a)(4) (concerning SSI).

For the reasons that follow, this Court denies Robert's motion and grants the Commissioner's cross-motion.[3]

## STANDARD OF REVIEW

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).  The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id*.  This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (alterations omitted) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)).  Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)).  "Substantial evidence" means "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." *Johnson*, 817 F.2d at 986.

---

[3] This Court assumes familiarity with the underlying facts, the procedural history, and the decision of the Administrative Law Judge ("ALJ") and refers only to the facts necessary to explain its decision.

**DISCUSSION**

I.  **ALLEGATIONS**

Robert argues that the ALJ erred in two ways.  See Docket Item 7-1.  First, Robert argues that the ALJ erred "when he failed to adequately address the mental limitations included in [the] 'persuasive' opinion [of Susan Santarpia, Ph.D.,] or incorporate them into the [residual functional capacity ("RFC")] finding."[4]  Id. at 8.  Second, Robert argues that the ALJ erred "when he based the RFC finding on his own lay interpretation of the record."  Id. at 11.  This Court disagrees and therefore affirms the Commissioner's finding of no disability.

II.  **ANALYSIS**

An ALJ must "weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole."  Matta v. Astrue, 508 F. App'x 53, 56 (2d Cir. 2013); accord Schillo v. Kijakazi, 31 F.4th 64, 78 (2d Cir. 2022).  But that does not mean that the RFC needs to "perfectly correspond with any of the opinions of medical sources cited in [the ALJ's] decision," Matta, 508 F. App'x at 56, or even be based on opinion evidence, see Corbiere v. Berryhill, 760 F. App'x 54, 56 (2d Cir. 2019).  As long as the ALJ considers all the medical evidence and appropriately analyzes the medical opinions, an RFC consistent with the record is not error.  See 20 C.F.R. §§ 404.1545, 416.945; see also Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013) (holding that remand is not necessary "[w]here an ALJ's analysis at Step Four regarding a claimant's

---

[4] A claimant's RFC is the most he "can still do despite [his] limitations . . . in an ordinary work setting on a regular and continuing basis."  Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8p, 1996 WL 374184, at *2 (Jul. 2, 1996)).  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."  Id.

functional limitations and restrictions affords an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence").

### A. Dr. Santarpia's Opinion

Robert first argues that the ALJ erred by finding Dr. Santarpia's opinion "persuasive" but failing either to include in the RFC all the limitations about which Dr. Santarpia opined or to explain why they were not included. *See* Docket Item 7-1 at 8-10. Robert suggests that the ALJ therefore "cherry-picked" from Dr. Santarpia's opinion and failed to address the opinion in its entirety. *Id.* This Court disagrees. Not only did the ALJ appropriately analyze and credit Dr. Santarpia's opinion, but he also included in the RFC even more restrictive limitations than those about which Dr. Santarpia opined.

In January 2018, Dr. Santarpia completed a consultative psychiatric evaluation. Docket Item 6 at 663. Dr. Santarpia opined that Robert

> [p]resents as able to understand, remember, and apply simple as well as complex directions and instructions; use reason and judgment to make work-related decisions; interact adequately with supervisors, co-workers, and the public[;] sustain concentration and perform a task at a consistent pace; sustain an ordinary routine and regular attendance at work; maintain personal hygiene and appropriate attire; and be aware of normal hazards and take appropriate precautions.

*Id.* at 665. Dr. Santarpia also found that Robert demonstrated a "mild impairment" in "regulating emotions, controlling behavior, and maintaining well-being." *Id.* at 665-66. In addition, although Dr. Santarpia found that Robert had symptoms "consistent with psychiatric problems," she concluded they were not "significant enough to interfere with [Robert's] ability to function on a daily basis." *Id.* at 666.

4

Robert claims that the ALJ erred by not addressing Dr. Santarpia's finding of a mild impairment in regulating emotions, controlling behavior, and maintaining well-being. Docket Item 7-1 at 9-10. But contrary to Robert's argument, the ALJ indeed addressed that finding. A claimant's ability to regulate emotions, control behavior, and maintain well-being describes the claimant's ability to adapt or manage himself. *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.00E(4). At step three, the ALJ found that Robert had a mild limitation in adapting or managing himself—that is, the same limitation found by Dr. Santarpia. *See* Docket Item 6 at 23. So the ALJ agreed with and accepted Dr. Santarpia's opined limitations.

Moreover, the ALJ did not err in addressing Robert's ability to adapt and manage himself at step three without explicitly addressing Dr. Santarpia's opinion. As part of step three, the ALJ explained in some detail why he found that Robert had a mild limitation in adapting and managing himself, *see id.*, and he was not required to link that finding to Dr. Santarpia's opinion or to repeat that same analysis when addressing Dr. Santarpia's opinion as a whole. *See Mangual v. Comm'r of Soc. Sec.*, 600 F. Supp. 3d 313, 329 (S.D.N.Y. 2022) ("Moreover, while the ALJ did not separately discuss [the claimant's] capacity to regulate emotions, control behavior, and maintain well-being in his discussion of [the doctors'] opinions, the ALJ elsewhere in his decision provided reasons for his finding that [the claimant] was only mildly limited in this area."); *see also Monguer v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) ("[A]lthough we would remand for further findings or a clearer explanation where we could not fathom the ALJ's rationale 'in relation to evidence in the record,' we would not remand where 'we were able to look to other portions of the ALJ's decision and to clearly credible evidence in

5

finding that his determination was supported by substantial evidence.'" (quoting *Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir. 1982))).

Finally, Robert suggests that limiting Robert "to low stress work and/or limited interactions with co-workers or the public" would have accounted for Dr. Santarpia's opined limitations and that the ALJ erred in failing to include those limitations in the RFC. *See* Docket Item 7-1 at 10. But Dr. Santarpia explicitly found that Robert could "use reason and judgment to make work-related decisions; interact adequately with supervisors, co-workers, and the public[;] sustain concentration and perform a task at a consistent pace; [and] sustain an ordinary routine and regular attendance at work." Docket Item 6 at 665. So Dr. Santarpia's opinion did not call for the additional limitations that Robert suggests.

In fact, by limiting Robert to "simple work of a routine and repetitive nature," *see id.* at 24, the ALJ formulated an RFC consistent with a moderate limitation in maintaining concentration, persistence, or pace—that is, a limitation even greater than what Dr. Santarpia found. *See Zabala v. Astrue*, 595 F.3d 402, 407 (2d Cir. 2010) (affirming ALJ's decision that claimant could perform prior unskilled work where "[n]one of the clinicians who examined [the claimant] indicated that she had anything more than moderate limitations in her work-related functioning, and most reported less severe limitations"); *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (finding that moderate limitations in the four areas of mental work-related functioning are not inconsistent with a limitation to simple, unskilled work); *Mangual*, 600 F. Supp. 3d at 329 ("As a general matter, moderate limitations are not an impediment to the ability to perform gainful activity, particularly when an RFC has already limited a claimant to unskilled, routine

6

work."). And the ALJ certainly did not err by concluding that Robert was *more* restricted than Dr. Santarpia found him to be. *See Ramsey v. Comm'r of Soc. Sec.*, 830 F. App'x 37, 39 (2d Cir. 2020); *see also Lesanti v. Comm'r of Soc. Sec.*, 436 F. Supp. 3d 639, 649 (W.D.N.Y. 2020) ("It appears the ALJ credited [p]laintiff's testimony that she could not focus and was easily distracted . . . and assessed a more generous limitation of 5% off-task time. The fact that the ALJ afforded [p]laintiff the benefit of the doubt and included a 5% off-task time limitation in the RFC assessment is not grounds for remand.").

In sum, the ALJ did not err in addressing Dr. Santarpia's opinion or in formulating Robert's RFC in light of that opinion. Robert's first argument therefore lacks merit.

### B. The RFC Determination

The ALJ found that Robert had the RFC for "sedentary work" as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a),[5] with the following additional limitations:

> [Robert] can only occasionally climb, balance, stoop, kneel, crouch, and crawl. He cannot climb ladders, ropes, or scaffolds. He can have no concentrated exposure to temperature extremes, vibration, humidity, wetness, or work hazards. He cannot have use of foot controls. He is limited to only occasional overhead reaching or working with the non-dominant right upper extremity. He can frequently finger, feel, and handle with the bilateral upper extremities. Lastly, he is limited to simple work of a routine and repetitive nature.

Docket Item 6 at 24. Robert argues that the ALJ erred by basing that RFC on "his own lay interpretation of the record." Docket Item 7-1 at 11-14. More specifically, Robert

---

[5] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a), 416.967(a).

argues that "there is no opinion evidence that speaks to [Robert's] ability to climb, balance, or crawl[;] use his bilateral upper extremities to finger, feel, and handle objects[;] or tolerate any exposure to environmental conditions such as heat, humidity, or work hazards." *Id.* at 13.  In other words, Robert seems to suggest that the ALJ needed opinion evidence for the specific limitations in the RFC.  Again, this Court disagrees.

As noted above, an ALJ's RFC determination need not "perfectly correspond with any of the opinions of medical sources cited in [the ALJ's] decision."  *Matta*, 508 F. App'x at 56.  In fact, a medical opinion is not required if "the record contains sufficient evidence from which an ALJ can assess the [claimant's] residual functional capacity." *See Monroe v. Comm'r of Soc. Sec.*, 752 F. App'x 75, 79 (2d Cir. 2018); *see also Johnson v. Colvin*, 669 F. App'x 44, 46 (2d Cir. 2016) (holding that "[t]aken together, [a claimant's] testimony and [a doctor's] letter constitute 'relevant evidence [that] a reasonable mind might accept as adequate to support' the conclusion that [the claimant] could perform 'light work.'" (quoting *Richardson*, 402 U.S. at 401)).  The question is whether there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008) (internal quotation marks and citations omitted).  And here there is.

To begin, the limitations in the RFC were equal to or greater than those suggested in the opinion evidence.  For example, Hongbiao Liu, M.D., an examining consultant, opined the Robert was moderately limited in lifting, carrying, and reaching overhead, as well as mildly to moderately limited in prolonged walking, bending, and kneeling.  *See* Docket Item 6 at 670.  By limiting Robert to sedentary work and no more

8

than occasional kneeling and reaching overhead, *see id.* at 24, the ALJ incorporated Dr. Liu's opined limitations into the RFC.  Along the same lines, another consultant, James Lawrence, M.D., found that Robert could occasionally lift and carry up to fifty pounds and frequently lift and carry twenty-five; was not otherwise limited in pushing, pulling, or operating foot or hand controls; could frequently stoop and climb ramps and stairs; could occasionally crouch, crawl, kneel, and climb ladders ropes and scaffolds; and had no manipulative or environmental limitations.  *See id*. at 86-88, 681.  The RFC's limitations to sedentary work; only occasional climbing, balancing, stooping, kneeling, crouching, and crawling; and never climbing ladders, ropes, or scaffolds, *see id.* at 24, more than accounted for those limitations.

Robert insists that the ALJ erred by finding that he "was capable of frequently fingering, feeling, and handling with his bilateral upper extremities[;] occasional climbing, balancing, stooping, kneeling, crouching, and crawling[;] and having non-concentrated exposure to temperature extremes, vibration, humidity, wetness, and work hazards" without support for those findings in a medical opinion.  *See* Docket Item 7-1 at 13.  But Robert is incorrect both factually and legally.

First, there was indeed support for those findings in the opinion evidence.  As just noted, Dr. Lawrence opined that Robert had no manipulative limitations, Docket Item 6 at 87, consistent with the ALJ's finding that Robert could frequently finger, feel, and handle, *id*. at 24.  Dr. Lawrence opined that Robert could occasionally or frequently stoop, crouch, crawl, kneel, and climb ladders, ropes, scaffolds, ramps, and stairs, *id*. at 87, consistent with the ALJ's finding that Robert could occasionally climb, balance, stoop, kneel, crouch, and crawl, *id.* at 24.  Dr. Lawrence opined that Robert had no

environmental limitations, *id*. at 87, even less restrictive than the ALJ's finding that Robert could not have concentrated exposure to temperature extremes, vibration, humidity, wetness, or work hazards, *id*. at 24.  So contrary to Robert's argument, there was support in the opinion evidence for the limitations in the RFC.[6]

What is more, the ALJ did not need opinion evidence to craft the limitations in the RFC.  As noted above, an RFC does not need to "perfectly correspond with any of the opinions of medical sources cited in [the ALJ's] decision," *Matta*, 508 F. App'x at 56, or even be based on medical opinion evidence, *see Corbiere*, 760 F. App'x at 56.  As long as there is record support for the limitations, this Court cannot second guess them.  *See Schillo*, 31 F.4th at 78 ("[T]he ALJ's RFC conclusion need not perfectly match any single medical opinion in the record, so long as it is supported by substantial evidence." (citing *Richardson*, 402 U.S. at 399)); *Cain S. v. Comm'r of Soc. Sec.*, 2022 WL 17252414, at *6 (W.D.N.Y. Nov. 28, 2022) (affirming the ALJ's decision where "record evidence supported the ALJ's determination [p]laintiff needed an accommodation for limitations in concentration").  And there certainly was record support for them here.

For example, the ALJ restricted Robert's exposure to temperature extremes, vibration, humidity, wetness, or work hazards based on Robert's history of diabetes.

---

[6] The fact that the limitations in the RFC were greater than those in the opinion evidence certainly did not prejudice Robert.  In fact, the courts have repeatedly held that an ALJ does not err by limiting the claimant to less than what the medical providers opined the claimant can do.  *See, e.g.*, *Mary Diane K. v. Comm'r of Soc. Sec.*, 541 F. Supp. 3d 270, 276 (W.D.N.Y. 2021) ("It was further not erroneous for the ALJ to partially credit [p]laintiff's testimony regarding her own limitations and assess more restrictive manipulative and environmental limitations than those identified by the consultative examiners."); *Castle v. Colvin*, 2017 WL 3939362, at *3 (W.D.N.Y. Sept. 8, 2017) ("[T]he fact that the ALJ's RFC assessment did not perfectly match [a medical] opinion, and was in fact more restrictive than that opinion, is not grounds for remand."); *see also Barone v. Comm'r of Soc. Sec.*, 2020 WL 3989350, at *4 (W.D.N.Y. Jul. 15, 2020) (collecting cases).

Docket Item 6 at 27.  More specifically, because of Robert's "potential for symptoms such as dizziness or blurred vision during episodes of uncontrolled blood sugar levels," the ALJ precluded exposure to certain environments.  *Id.*  Likewise, the ALJ limited Robert to only "frequent fingering, feeling, and handling" based on his "history of carpal tunnel syndrome."  *Id.*  Because these limitations were consistent with the record as a whole, the ALJ did not "arbitrarily substitute his own judgment for competent medical opinion."  *Mariana v. Colvin*, 567 F. App'x 8, 10 (2d Cir. 2014) (internal quotation marks omitted) (quoting *McBrayer v. Sec'y of Health & Human Servs.*, 712 F.2d 795, 799 (2d Cir. 1983)).

Finally, Robert's argument fails because he does not offer any evidence suggesting that he cannot do what the RFC says he can.  *See Barry v. Colvin*, 606 F. App'x 621, 622 (2d Cir. 2015) ("A lack of supporting evidence on a matter for which the claimant bears the burden of proof, particularly when coupled with other inconsistent record evidence, can constitute substantial evidence supporting a denial of benefits.").  Indeed, Robert does not suggest any additional physical limitations that the ALJ should have included in a more restrictive RFC.  *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) ("Here, Smith had a duty to prove a more restrictive RFC, and [he] failed to do so." (citations omitted)); *Jeffrey R. v. Comm'r of Soc. Sec.*, 2023 WL 2581539, at *7 (W.D.N.Y. Mar. 21, 2023) ("[I]t is ultimately [p]laintiff's burden to prove a more restrictive RFC than the one assessed by the ALJ.").

In sum, the RFC was based on Robert's complaints, the treatment records, the hearing testimony, and the opinions of several medical professionals.  *See* Docket Item 6 at 24-29.  In fact, the RFC included more restrictions and limitations than the opinion

evidence suggested.  Therefore, the ALJ's RFC determination was supported by substantial evidence, and this Court cannot and will not second-guess it.  *Matta*, 508 F. App'x at 56.

## **CONCLUSION**

The ALJ's decision was not contrary to the substantial evidence in the record, nor did it result from any legal error.  Therefore, and for the reasons stated above, Robert's motion for judgment on the pleadings, Docket Item 7, is DENIED, and the Commissioner's cross-motion for judgment on the pleadings, Docket Item 9, is GRANTED.  The complaint is DISMISSED, and the Clerk of Court shall close the file.


SO ORDERED.

Dated:   August 8, 2023
         Buffalo, New York


                                        */s/ Lawrence J. Vilardo*
                                        LAWRENCE J. VILARDO
                                        UNITED STATES DISTRICT JUDGE